UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MAYRA BURGOS, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:09-cv-1216 (VLB) |
| MICHAEL J. ASTRUE, COMMISSIONER, | : | |
| SOCIAL SECURITY ADMINISTRATION, | : | |
|     Defendant. | : | September 22, 2010 |

### RULING ON OBJECTION TO RECOMMENDED RULING [Doc. #20] ON PLAINTIFF'S MOTION TO REVERSE OR REMAND COMMISSIONER'S DECISION [Doc. #14] AND COMMISSIONER'S MOTION TO AFFIRM [Doc. #18]

Pursuant to 42 U.S.C. § 405, the Plaintiff, Mayra Burgos, seeks review of the final decision of the Defendant, the Commissioner of Social Security (hereinafter the "Commissioner"), denying her application for disability and supplemental security income. The Plaintiff moved to reverse or remand the Commissioner's decision (Doc. #14), and the Commissioner moved to affirm (Doc. #18). The case was referred to Magistrate Judge Thomas P. Smith. On July 26, 2010, Magistrate Judge Smith issued a Recommended Ruling (Doc. #20) denying the Plaintiff's motion to reverse or remand and granting the Commissioner's motion to affirm. The Plaintiff timely filed an Objection to the Recommended Ruling (Doc. # 21). For the reasons set forth below, the Court adopts the Recommended Ruling in part and rejects the Recommended Ruling in part. Therefore, the Plaintiff's motion to reverse or remand is granted in part and denied in part, the Commissioner's motion to affirm is granted in part and denied in part, and this matter is remanded for clarification as discussed below.

## I. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 72.2(b), the portions of the Magistrate Judge's decision objected to by the Plaintiff are reviewed de novo, and any part or the entirety of the Recommended Ruling may be adopted, rejected, or modified. The Social Security Act, however, limits the Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); see also, Richardson v. Perales, 402 U.S. 389, 401 (1971). Moreover, where the objecting party has made "only conclusory or general objections, or simply reiterates [her] original argument," the Court reviews the recommendation and ruling of the Magistrate Judge only for clear error. See Pall Corp. v. Entegria, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008) (quoting Barratt v. Joie, No. 960cv0324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002).

## II. DISCUSSION

The Court presumes familiarity with the Magistrate Judge's Recommended Ruling, which describes the factual and procedural background of this case. In her Objection to the Recommended Ruling, the Plaintiff identifies five specific issues on which she claims the Magistrate Judge erred. This Court will address each contention in turn.

### A. ALJ's Assessment of Plaintiff's Fibromyalgia

First, the Plaintiff argues that the Recommended Ruling is defective because it approved the Administrative Law Judge's ("ALJ") denial of benefits

even though the ALJ failed to fully evaluate the Plaintiff's fibromyalgia in accordance with the Second Circuit's decision in Green-Younger v. Barnhart, 335 F.3d 99 (2d Cir. 2003).

In Green-Younger v. Barnhart, the Second Circuit held that the ALJ erred by failing to give controlling weight to the opinion of the plaintiff's treating physician that she was disabled by fibromyalgia, and instead effectively required objective evidence beyond the clinical findings necessary for a diagnosis of fibromyalgia under established medical guidelines. 335 F.2d at 106. This case is unlike Green-Younger, however, because the ALJ did not require objective evidence to support a diagnosis of fibromyalgia. Instead, the ALJ credited the diagnosis of fibromyalgia, finding that it was a "severe impairment" for purposes of the second step of the sequential evaluation process. (Tr. at 13).[1] Nevertheless, while recognizing that her fibromyalgia qualified as a "severe impairment," the ALJ found that the Plaintiff was not disabled under the Social Security Act because her allegations of total disability were not supported by the objective medical evidence, her course of treatment, her medications, the medical opinions in the record, her daily living, her work history, and the overall inconsistencies in the record. (Tr. at 19). Further, as discussed in the Recommended Ruling, the ALJ cited Dr. Aldam's October 2005 report indicating that the Plaintiff's fibromyalgia-related pain decreased as a result of treatment. (Tr. at 15, 230).

---

[1] This decision refers to cited portions of the administrative record as "Tr." followed by the relevant page number(s).

3

As the Second Circuit recognized in a case subsequent to Green-Younger, "mere diagnosis of fibromyalgia without a finding as to the severity of the symptoms and limitations does not mandate a finding of disability." Rivers v. Astrue, 280 Fed. Appx. 20, 22 (2d Cir. 2008) (affirming ALJ's denial of social security benefits where record did not contain evidence that plaintiff's fibromyalgia caused marked limitations in her activity of daily living and plaintiff's testimony was not credible in light of clinical findings indicating only mild symptoms); see also Tsarelka v. Secretary of Health & Human Services, 842 F.2d 529, 534 (1st Cir. 1988) ("The mere presence of a fibrositis condition does not entitle [the claimant] to disability benefits."). Here, as in Rivers, the Plaintiff fails to cite to any evidence in the record indicating that her fibromyalgia caused symptoms of such severity that they markedly limited her activity of daily living. Also as in Rivers, the ALJ found that the Plaintiff's reports of disabling pain due to her fibromyalgia were not credible in light of the conflicting evidence in the record. (Tr. at 18-21).

The Plaintiff also argues that, even if her pain due to fibromyalgia decreased as a result of treatment, she still experienced pain, and therefore the ALJ should have determined where the pain was located in her body, how frequently the pain occurred, how severe the pain was, and how long the pain lasted. However, contrary to the Plaintiff's argument, the ALJ did consider the pain associated with the Plaintiff's fibromyalgia. The ALJ noted the Plaintiff's report that she suffered chronic pain, discussed her activities of living and response to medication, and found that no treating or examining physician had

4

imposed any greater work restrictions than those included in the RFC determination. (Tr. at 18-20). Therefore, this Court agrees with the Magistrate Judge's determination that the ALJ's ruling with respect to the Plaintiff's fibromyalgia was supported by substantial evidence and did not misapply the relevant legal standards.

### B. Standard for Determining the Severity of Impairments and for Evaluating All Impairments in Combination

Second, the Plaintiff asserts that the Recommended Ruling applied an incorrect standard in determining the severity of the Plaintiff's impairments, and thus erroneously approved the ALJ's exclusion of several impairments from the list of the Plaintiff's "severe impairments." Specifically, the Plaintiff contends that she was diagnosed with eighteen different illnesses and ailments, but that the ALJ erred by excluding asthma, seasonal allergies, anemia, chronic fatigue syndrome, and numerous orthopedic problems from the list of her severe impairments. According to the Plaintiff, in order to satisfy her burden at the second step of the sequential evaluation process of demonstrating that each of these impairments qualify as "severe", she need only present medical records which show that she has eighteen impairments, that her doctors believe that she has all eighteen impairments, that her doctors diagnosed them through accepted medical procedures, and that the impairments are capable of causing the kind of symptoms of which she complains.

As the Defendant correctly states, "mere diagnosis of [an ailment] says nothing about the severity of the condition." Burrows v. Barnhart, No. 3:03cv342, 2007 WL 708627, at *6 (D. Conn. Feb. 20, 2007). At step two of the sequential

5

evaluation process, the claimant has the burden of providing medical evidence which demonstrates the severity of her condition. Bowen v. Yuckert, 482 U.S. 137, 146 (1987). Regulations define a "severe impairment" as "an impairment or a combination of impairments that significantly limit [an individual's] physical or mental ability to do basic work activities."[2] 20 C.F.R. § 404.1520(c). In order to meet this burden, the Plaintiff must satisfy only a minimal threshold standard. The Second Circuit has explained that the severity regulation is intended to "screen out only de minimus claims." Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995). "[A] threshold determination of severity could deny disability claims only if the medical impairment is so minimal that no set of vocational factors, even if fully considered, could result in a finding of disability." Id.; see also Serrano v. Astrue, 645 F. Supp. 2d 64, 66 (D. Conn. 2009) ("The claimant has minimal burden at step two as the severity regulation is designed to eliminate only clearly insubstantial claims.").

Here, the ALJ's decision found that five of the Plaintiff's ailments – depression, fibromyalgia, epicondylitis of the left elbow, headaches, and obesity - constituted "severe" impairments. (Tr. at 13-16). The ALJ also discussed the Plaintiff's diabetes, finding that it did not constitute a "severe" impairment. (Tr. at 16). However, the ALJ's decision makes no mention of the Plaintiff's remaining ailments. Therefore, on the current record, the Court is unable to determine

---

[2] Basic work activities include "(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching carry, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b).

6

whether or not the ALJ considered these remaining ailments that were not specifically mentioned in the administrative decision to constitute "severe" impairments.

Moreover, even if certain of the Plaintiff's condition do not qualify as "severe," remand is necessary because the Court is unable to determine on the current record whether the ALJ considered all of the Plaintiff's impairments, both severe and non-severe, in assessing the combined impact on her ability to work. As the Second Circuit has recognized, "the combined effect of a claimant's impairments must be considered in determining disability; the SSA must evaluate the combined impact on a claimant's ability to work, regardless of whether every impairment is severe." <u>Dixon</u>, 54 F.3d at 1031. "The ALJ must also consider the combined effects of non-severe impairments. The presence of all impairments, even if one may not quite meet the listed level, could be equally disabling as a listed impairment." <u>Koseck v. Secretary of Health and Human Services</u>, 865 F. Supp. 1000, 1010 (W.D.N.Y. 1994) (internal citations omitted).

In the administrative decision, the ALJ states without specificity that "the undersigned has considered all symptoms and the extent to which these symptoms can be accepted as consistent with the objective medical evidence" (Tr. at 18), and concludes that "[t]he overall record reflects there are no clinical or objective findings manifested by the claimant's physical impairments, either individually or in combination, to medically meet or equal a Section 1.00 or other listed impairment." (Tr. at 16). However, as discussed above, the ALJ did not actually identify and consider each of the Plaintiff's impairments, both severe and

7

non-severe, in the administrative decision. Therefore, the Court is unable to determine whether the ALJ evaluated the combined effect of Plaintiff's impairments as a whole on her ability to work, or whether the ALJ instead considered only those six impairments actually identified in the decision. Accordingly, this matter is remanded so that the ALJ can specifically identify all of the Plaintiff's impairments, both severe and non-severe, and evaluate their combined impact on her ability to work. See, e.g., Graham v. Heckler, 580 F. Supp. 1238, 1242 (S.D.N.Y. 1984) (remanding case to ALJ for clearer findings where ALJ's decision did not reflect that ALJ seriously considered the combined effect of all of the claimant's impairments).

### C. ALJ's Residual Functional Capacity ("RFC") Evaluation

Third, the Plaintiff argues that the Recommended Ruling approved an incorrect RFC evaluation wherein the ALJ found that the Plaintiff has the RFC "to perform light work as defined in 20 C.F.R. 404.1567(b)" including "standing and walking up to eight hours with the opportunity to shift position briefly." As an initial matter, the Court notes that, in light of the above finding that remand is necessary to enable the ALJ to clarify the administrative ruling and evaluate the combined effect of all of the Plaintiff's impairments, both severe and non-severe, on her ability to work, the ALJ's RFC determination may potentially be modified. For purposes of addressing the present argument, however, the Court assumes the appropriateness of the current RFC determination.

In making her argument, the Plaintiff relies upon a statement in the Recommended Ruling noting that "[t]he ALJ's decision explained that the plaintiff

8

was able to walk for ten minutes before taking a five to six minute break." (Doc. #20 at 5). However, this statement was not a part of the ALJ's RFC determination, but was instead a recitation of the Plaintiff's testimony, which was being considered in the evaluation of her subjective complaints. In the actual RFC determination, the ALJ found that the Plaintiff could sit, stand, and walk up to eight hours with the opportunity to shift positions briefly (Tr. 18), and such a finding would not preclude a claimant's ability to perform substantial gainful activity. The Plaintiff has failed to demonstrate any clear error by the ALJ in making this finding.

The Plaintiff also contends that the Magistrate Judge's approval of the ALJ's finding that her depression did not prevent her from working was based on factual errors. Specifically, the Plaintiff claims that the Magistrate Judge twice stated that the Plaintiff had not sought psychological treatment until February 2008, when in fact the record reflects that she had sought treatment from her medical doctor, Dr. Behjet, as far back as 1999, when she was prescribed Paxil. (Tr. 216). In addition, the Plaintiff notes that she was receiving medication for depression from her doctors throughout 2005 and 2006. (Tr. at 233, 247, 257, 282, 313-314, 325-29).

However, the Plaintiff is in error. The record reflects that the ALJ considered the history of the Plaintiff's depression. The ALJ expressly noted that, at the time of her initial evaluation, the Plaintiff alleged that she had been experiencing symptoms of depression for ten years, that she had sought treatment for her depression from Dr. Behjet in 1997, that Dr. Behjet prescribed

9

her medication, and that she claimed she failed to seek further treatment and discontinued the use of medication because of a lack of insurance and inability to pay. (Tr. at 14). The ALJ further discussed the fact that the Plaintiff did not seek treatment from a psychiatrist or psychologist for depression until February 2008. (Tr. at 14, 19). Therefore, in noting that the Plaintiff did not seek treatment for her depression until February 2008, the ALJ was drawing a distinction between treatment in the form of medication from her primary care providers and treatment specifically for depression with mental health specialists. The ALJ also explained that the record contained no evidence to support the Plaintiff's allegation that she discontinued medication and failed to seek further treatment for her depression prior to February 2008 because of lack of insurance or inability to pay. (Tr. at 19). Finally, the ALJ concluded that the evidence in the record and the Plaintiff's testimony supported a diagnosis of depression with limitations consistent with the RFC determination that the Plaintiff was able to perform light work. (Tr. at 19). The Plaintiff has failed to demonstrate that this conclusion was not supported by substantial evidence or based upon legal errors.

### D. <u>ALJ's Failure to Make Specific Findings About All of Plaintiff's Impairments and to Include the Specific Findings in Description of Plaintiff's RFC</u>

Fourth, the Plaintiff contends that the Recommended Ruling errs in approving the ALJ's failure to make specific findings regarding all of the Plaintiff's impairments and to include the specific findings in the description of the Plaintiff's RFC. The Plaintiff recounts a number of specific impairments that she claims the ALJ failed to properly consider in making the RFC determination. She contends that, although the ALJ did not find her asthma to be a severe

impairment, even mild asthma can cause symptoms and therefore the ALJ should have determined how frequently those symptoms occur, how severe they are, and for how long they last. Similarly, she contends that the ALJ improperly failed to adequately consider her anemia, Chronic Fatigue Syndrome, and fibromyalgia because all three of these conditions cause fatigue and, therefore, the ALJ should have determined now frequently she has fatigue, how severe the fatigue is, and for how long it lasts when it occurs. She further asserts that the ALJ improperly failed to determine how frequently she has headaches, how severe the pain is when they occur, and for how long the headaches last. In addition, she contends that the ALJ erred by failing to mention nausea even though migraine headaches are known to cause nausea, nausea is a side effect of medication typically prescribed for migraine headaches, and she had described nausea as one of her symptoms in medical reports. She also contends that the ALJ failed to consider her numerous orthopedic problems even though she suffered pain and received treatment for these problems, and that the ALJ should have determined, for each location in which she experienced pain, how frequently the pain occurs, how severe it is, and for how long it lasts.

First, as discussed above in Section II.A., the ALJ considered the Plaintiff's fibromyalgia to be a severe impairment and discussed her symptoms in the RFC finding. (Tr. at 18-20). The ALJ also determined that the Plaintiff's headaches qualified as a severe impairment. (Tr. at 13). Further, contrary to the Plaintiff's assertions, the record demonstrates no error in the ALJ's evaluation of her headaches. In the administrative decision, the ALJ evaluated the evidence in the

11

record regarding the Plaintiff's headaches, stating that the Plaintiff reported to Dr. Komm that her headaches occurred daily, that she was prescribed medication for the condition, and that her headaches responded well to treatment. (Tr. at 15, 19). The ALJ also noted that the Plaintiff's headaches were not consistently alleged in the record after her normal October 2006 neurological consultation, she reported that medication stopped her headaches, and she failed to obtain any subsequent treatment for her headaches. (Tr. at 20).

With respect to the remaining impairments, the Court has already determined that the current record does not enable the Court to assess whether the ALJ properly considered the combined effect of all of the Plaintiff's impairments, both severe and non-severe, on her ability to work. Therefore, this matter is remanded so that the ALJ may specifically identify all of the Plaintiff's impairments and evaluate their combined impact on her ability to work. See supra Section II.B.

Next, the Plaintiff asserts that the ALJ erred in giving "great weight" to the opinions of Dr. Harvey and Dr. Hanson, who served as State psychological consultants, that her psychological symptoms did not prevent her from working despite the fact that they marked in their "functional capacity assessment" forms that she has moderate limitations of her "ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Tr. at 260, 294). According to the Plaintiff, the ALJ should have made specific findings with respect to her limitations, including how many rest periods

she would need each day and how long each rest period would be, how often psychologically based symptoms would interrupt her normal workday and workweek, and for how long each interruption would last.

However, despite the Plaintiff's moderate limitations, Dr. Harvey and Dr. Hanson both ultimately concluded that her mental residual functional capacity enabled her to recall routine directions, work locations and procedures, follow simple 1-2 step directions, work around others, keep a regular schedule, sustain effort for two hour periods on routine tasks, carry out simple tasks and make simple decisions, and work within a schedule without extra supervision.  (Tr. at 261, 295).  As the Magistrate Judge recognized, the fact that Dr. Harvey and Dr. Hanson indicated that the Plaintiff had moderate limitations on her work abilities is not inconsistent with their ultimate conclusion that she was able to work at a job involving simple and routine tasks, nor is it inconsistent with the ALJ's RFC determination.  Indeed, as the Magistrate Judge discussed, in making the RFC determination the ALJ thoroughly analyzed the record with respect to the Plaintiff's alleged psychological impairments.  The ALJ explained that the Plaintiff's allegations of more serious psychological limitations were inconsistent with her full range of daily activity and with Dr. Losada-Zarate's psychological consultative report.  (Tr. at 19).   Further, as discussed above in Section III.C., the ALJ explained that the Plaintiff did not seek treatment from a mental health professional until February 2008 despite her claim that she had suffered from depression for over ten years.   (Tr. at 14, 19).   Therefore, the ALJ's finding that

the Plaintiff's psychological impairments do not preclude her from performing light work with the specified limitations is supported by substantial evidence.

Finally, the Plaintiff argues that the ALJ erred by failing to make specific findings with respect to her episodes of decompensation despite the fact that Dr. Harvey noted in his "psychiatric review technique" form that she had experienced one or two "episodes of decompensation" of "extended duration." (Tr. at 273). Notwithstanding Dr. Harvey's notation, the ALJ concluded that there was no evidence in the record and no testimony reflecting that the Plaintiff has ever experienced any episodes of decompensation. (Tr. at 17). However, the ALJ did not elaborate upon the basis for this finding, nor did the ALJ explain why Dr. Harvey's report indicating that the Plaintiff had in fact experienced one or two episodes of decompensation of extended duration was not credited. Therefore, the Court cannot determine on the current record whether or not the ALJ's conclusion in this regard was based upon substantial evidence. On remand, the ALJ is instructed to clarify the basis for the finding that the Plaintiff has never experienced any episodes of decompensation despite Dr. Harvey's report to the contrary.

### E. ALJ's Conclusion that Plaintiff Can Perform Light Work

Fifth, the Plaintiff asserts that the Recommended Ruling erroneously approves the ALJ's conclusion that the Plaintiff can perform "light work" as defined in 20 C.F.R. § 404.1567(b) with additional enumerated limitations because the three jobs the ALJ identified as jobs which the Plaintiff could perform cannot in fact be performed by someone with the Plaintiff's ailments.

14

"Light work" is defined by regulation as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Further, "a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." Id. In the RFC finding, the ALJ further elaborated that the Plaintiff "is limited to following simple 1-2 step instructions in a low stress environment with no fast paced tasks and no high production goals; and demonstrated instructions, lifting or carrying 10 pounds frequently and 20 pounds occasionally, sitting, standing, and walking up to 8 hours with the opportunity to shift position briefly, occasionally climbing ramps and stairs, no climbing ladders, ropes, and scaffolds, occasional balancing, stooping, and kneeling; no crouching and crawling, occasionally reaching overhead or reaching in all directions with the left arm or hand." (Tr. at 18). After considering the Plaintiff's age, education, work experience, and the foregoing RFC finding, the ALJ concluded that there are jobs in the national economy that exist in significant numbers that the Plaintiff can perform. (Tr. at 22-23). In reaching this conclusion, the ALJ relied upon the testimony of the vocational expert, Dr. Steven Sachs, who testified that a person with the Plaintiff's age, education, work experience and RFC could perform work as a "food prep worker," "hand packer," and "fuse packer." (Tr. at 44-45).

The first job identified by the ALJ was "food prep worker." The Plaintiff complains that the ALJ did not provide a Dictionary of Occupational Titles ("DOT") number for this position because the vocational expert did not give one

during his testimony. However, the ALJ's failure to identify a DOT number does not amount to error. See <u>Irelan v. Barnhart</u>, No. 03-1908, 2003 WL 22871890, at *5 (3rd Cir. Dec. 4, 2003) (holding that "there is no legal basis for [plaintiff's] argument that 'if the claimant is to adequately test the accuracy of the VE testimony, the DOT numbers must be available'").

The Plaintiff further asserts that, according to the DOT, the title "Food Preparation" includes jobs that require medium exertion, such as "Cook Helper" (DOT No. 317.687-010), "Kitchen Helper" (DOT No. 317.687-010), "Sandwich Maker" (DOT No. 317.664-010), and "Food Service Worker" (DOT No. 319.677-014). <u>See</u> Dictionary of Occupational Titles, available at [www.occupationalinfo.org](www.occupationalinfo.org). However, there are also several jobs classified under the category "Food Preparation" that require only light exertion, such as "Salad Maker" (DOT No. 317.384-010), "Pantry Goods Maker" (DOT No. 317.684-014), and "Food Assembler" (DOT No. 319.484-010). <u>Id.</u> Therefore, assuming the appropriateness of the RFC determination, the Plaintiff has not established that the ALJ erred by concluding that she can work as a "food prep worker."

The ALJ also found that the Plaintiff could perform work as a "hand packer," which would include, for example, a job as a "Shoe Packer" (DOT No. 920.687-166) or a job as a "Packer-Fuser" (DOT No. 737.687-094). The Plaintiff claims that these jobs require handling and reaching, frequent use of the fingers, hands, and arms for manipulating objects, and exposure to chemicals, fumes, and pyrotechnic devices. According to the Plaintiff, these duties are not appropriate for a person with allergies, asthma, elbow and shoulder ailments,

pain from fibromyalgia, or numbness and weakness in the fingers, hands, and arms.  However, the ALJ's RFC finding does not indicate that the Plaintiff is limited from performing these particular duties.  On remand, the ALJ is instructed to consider whether the RFC finding should be modified based upon the combined effect of all of the Plaintiff's disabilities, both severe and non-severe.  Based upon the present record, however, the Plaintiff has failed to demonstrate that the ALJ erred by concluding that she can perform the identified jobs.

## IV. CONCLUSION

Based on the above reasoning, the Recommended Ruling (Doc. #20) is adopted in part and rejected in part.  Accordingly, the Plaintiff's motion to reverse or remand (Doc. #14) is granted in part and denied in part, and the Commissioner's motion to affirm (Doc. #18) is granted in part and denied in part.  The Clerk is directed to remand this case to the ALJ to (1) make specific findings as to the combined effect of all of the Plaintiff's impairments, both severe and non-severe, on her ability to work, and (2) clarify the basis for the conclusion that the Plaintiff has not experienced any episodes of decompensation despite a psychological consultative report from Dr. Harvey indicating that she has.  The Clerk is further directed to close this case.

IT IS SO ORDERED.

_____/s/_____
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut:  September 22, 2010.